Filed 12/20/23  P. v. Warren CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADE JESSIE WARREN,<br><br>    Defendant and Appellant. | D081199<br><br><br>(Super. Ct. No. SWF1200636) |

APPEAL from an order of the Superior Court of Riverside County, John D. Molloy, Judge.  Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lane E. Winters and Charles C. Ragland, Assistant Attorneys General, Lynne G. McGinnis and Collette C. Cavalier, Deputy Attorneys General for Plaintiff and Respondent.

The People charged Ade Jessie Warren with first degree murder with premeditation, deliberation, and malice aforethought (Pen. Code,[1] § 187,

---

[1]    Undesignated statutory references are to the Penal Code.

subd. (a); count 1) and gang participation (§ 186.22, subd. (a); count 2), alleging as a special circumstance with respect to the murder charge that he was an active participant in a gang (§ 190.2, subd. (a)(22)).  The People also alleged as to the murder charge that Warren personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), as well as gang-related firearm and sentencing enhancements (§§ 186.22, subd. (b), 12022.53, subd. (e)). (*People v. Warren* (Aug. 5, 2015, D067416) [nonpub. opn.].)  In 2013, a jury found Warren guilty of second degree murder and gang participation, and found true the criminal street gang sentence enhancement (§ 186.22, subd. (b)) as well as the gang-related firearm enhancement, that is, that he acted as a principal in a gang crime in which a principal discharged a firearm causing death to another person who was not an accomplice (§ 12022.53, subd. (e)). The jury found not true the allegation that Warren personally and intentionally discharged a firearm.  On Warren's direct appeal, this court held there was insufficient evidence to support his gang participation conviction and reversed it. (*People v. Warren, supra,* D067416.)[2]

Claiming the jury determined there was insufficient evidence to prove he was the shooter or actual killer, Warren appeals an order summarily denying his section 1170.95 (now section 1172.6)[3] petition for resentencing of

---

[2]    We also modified the judgment as to certain fines. (*People v. Warren, supra,* D067416.)  The jury did not render a verdict on the gang special circumstance allegation given its not guilty verdict on the first degree murder charge. (*Ibid.*)  Warren did not claim that any lack of evidence as to whether he committed the murder with another gang member affected the jury's findings on the gang related firearm enhancement or any other sentence enhancements on the murder count. (*Ibid.*)

[3]    Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We refer to section 1172.6 throughout this opinion.

his second degree murder conviction. He contends he made out a prima facie claim for relief under the statute by filing a facially sufficient petition alleging he was convicted of second degree murder and could not now legally be convicted based on changes to the murder laws. The People maintain that in convicting Warren, the jury necessarily found he committed second degree murder either as a direct perpetrator or direct aider and abettor.[4] In response to the People's briefing, Warren contends the aiding and abetting instruction given to his jury, CALCRIM No. 401, combined with CALCRIM No. 520 as to murder with malice aforethought, permitted jurors to find him guilty of second degree murder on a theory under which malice was imputed to him based solely on his participation in the crime, which is prohibited by section 1172.6. He maintains the matter must be remanded for the court to issue an order to show cause and conduct an evidentiary hearing. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The detailed facts underlying Warren's 2013 second degree murder conviction are set out in *People v. Warren, supra,* D067416. We do not rely on the facts in resolving this appeal, but for context set them out here with some edits.

*The People's evidence*

On the afternoon of the murder, Ezequial Ruedas was on the front porch of his home in a neighborhood in San Jacinto, with his friend Anthony Valdies. At approximately 3:00 p.m. that day, a group of young men approached Ruedas and Valdies. One of the men, whom Ruedas recognized

---

[4]   We granted the People's request to take judicial notice of the instructions given to the jury in the underlying matter, the jury's verdict forms and this court's prior opinion on Warren's direct appeal.

3

as "Junior" (Norris Tremble), started yelling the name of Tremble's gang, L-Squad. Tremble also said, "Fuck San Jacinto," a reference to a rival gang, and directed several racially derogatory comments toward Ruedas.

At some point during the altercation, Ruedas called his neighbor, victim Fernando Villarino, on the telephone. Villarino and his cousin, Victor Chavez, came outside and watched the altercation from across the street. Ruedas angrily told Tremble that he was not a member of the San Jacinto gang and to get away from his fence. Tremble tried to get Ruedas to come outside of his yard and fight. Ruedas refused, but challenged Tremble to come inside his yard to fight. Tremble's group eventually walked away. L-Squad gang members Javohn Milne and Warren were among those who were with Tremble during the altercation.

About 20 or 30 minutes later, Tremble's group walked by Ruedas's residence again and made several additional derogatory comments. After approximately 30 more minutes, the group walked by a third time, and uttered several racial slurs and gang related insults.

At approximately 6:40 that evening, police detained five L-squad gang members near the scene of the altercations: Tremble, Warren, Milne, Andre Banks, and Jacob Cramer. Tremble was arrested after an officer observed him making racial slurs and threatening Villarino. Warren, Milne, and Banks were released at the scene. Cramer was arrested for providing false information to a police officer. Cramer and Tremble were in police custody at the time of the murder.

At approximately 7:15 p.m., a group of men, which included Milne and Warren, returned to the area, and directed additional racial slurs and gang related statements toward Ruedas and Chavez. According to Ruedas, some older men, who were not present during the earlier altercations, were with

4

Milne and Warren. Ruedas, Valdies, Villarino, Chavez, and two friends of Chavez (Juan Sanchez and Marcelino Robles), chased the group out of the neighborhood.

Around 8:30 p.m. that evening, Warren returned to the scene of the earlier altercations, walking up the middle of the street. Ruedas saw a second man on the left side of the street, and a third man on the right side of the street. Ruedas could not describe the two men because they stayed behind Warren and it was dark. Chavez, Sanchez, Robles, Ruedas, Villarino, and Valdies walked toward Warren.

According to Ruedas, Warren called out, " 'Well, let's do this then,' " and Chavez answered, "All right, let's do it." Warren reached into his waistband, pulled out a gun, and began firing. Chavez saw Villarino get hit and fall to the ground.

Police responded to the shooting at 8:37 p.m. Villarino was lying partially on the sidewalk and partially on the street. He had been shot in the head and the left arm, and was pronounced dead at the scene.

Eight nine-millimeter shell casings were found in the middle of street, approximately 152 feet from Villarino. In addition, three nine-millimeter casings were found farther south down the street. Two .45-caliber casings were also found on the south side of the street. The groupings of the casings were consistent with the possibility that there was another shooter in addition to Warren.

Ruedas, Chavez and Valdies each identified Warren in a photographic lineup.

Senior District Attorney Investigator David Haskins testified as a gang expert. According to Investigator Haskins, L-Squad and San Jacinto have a history of violence between the two gangs dating back to the early 2000's.

5

Investigator Haskins explained that the rivalry is partially racial, and that L-Squad members are "motivated by the hatred of Hispanics." Haskins stated that in his opinion, a hypothetical murder based on the facts of this case would have been committed for the benefit of L-Squad.

*The defense*

Warren presented an alibi defense through three witnesses who testified that he was with them, and not at the scene of the shooting, at the time of the murder.

*Jury instructions*

The court instructed the jury with CALCRIM No. 400 on aiding and abetting generally. That instruction reads: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it." It instructed the jury with CALCRIM No. 401, which reads: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does

6

not need to actually have been present when the crime was committed to be guilty as an aider and abettor.  [¶]  If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him an aider and abettor." (Some italics omitted.)

The court also instructed the jury as to relevant principles of homicide, then with CALCRIM No. 520 as to first or second degree murder with malice aforethought, which reads:  "The defendant is charged in count one with murder in violation of [ ] section 187.  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1. The defendant committed an act that caused the death of another person; [¶] 2. When the defendant acted, he had a state of mind called malice aforethought; [¶] AND [¶] 3. He killed without lawful excuse or justification.  [¶]  There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.  [¶] The defendant acted with express malice if he unlawfully intended to kill.  [¶] The defendant acted with implied malice if:  [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4. He deliberately acted with conscious disregard for human life.  [¶]  Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before the act that caused death is committed.  It does not require deliberation or the passage of any particular period of time."  (Italics and some capitalization omitted.)

7

The jury was instructed with CALCRIM No. 521 that it could find Warren guilty of first degree murder if the People proved he acted willfully, deliberately, and with premeditation. Apart from conspiracy to commit murder,[5] the jurors were not instructed on any other theory of first or second degree murder.

In his direct appeal Warren did not challenge any of these jury instructions or advance any other jury instruction challenge.

*Warren's petition for resentencing*

In November 2021, Warren, representing himself, petitioned for resentencing under now section 1172.6. He checked boxes indicating that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"

---

[5] The court instructed the jurors that the People had presented evidence of a conspiracy to commit murder. The instructions stated in part that to prove the defendant was a member of a conspiracy in this case, the People must prove that "[t]he defendant intended to agree and did agree with one or more unidentified people to commit the crime of murder"; "[a]t the time of the agreement, the defendant and one or more of the alleged member[s] of the conspiracy intended that one or more of them would commit murder"; and "the defendant, or one or more of the unidentified alleged co-conspirators, or all of them, committed the following overt act to accomplish murder: one or more of the alleged co-conspirators entered Santa Rosa street armed with at least one firearm and discharged that firearm[.]" Warren does not raise any issues with the conspiracy instructions in this appeal. That likely is because "conspiracy to commit murder may not be based on a theory of implied malice" (*People v. Beck & Cruz* (2019) 8 Cal.5th 548, 642) but requires intent to kill. (*People v. Lopez* (2023) 14 Cal.5th 562, 588; see also *People v. Allen* (2023) 97 Cal.App.5th 389, ___.)

8

and "[a]t trial [he] was convicted of murder, attempted murder, or manslaughter pursuant to the felony murder rule, other theory which malice imputed to a person based solely on that person's participation in a crime, or the natural and probable consequences doctrine." He did not check a box stating: "I was charged or convicted of [second] degree murder or attempted murder under the natural and probable consequence doctrine or under the [second] degree felony murder doctrine and I could not now be charged or convicted of murder or attempted murder because of changes to . . . [section] 188, effective January 1, 2019." The People did not file a written response to the petition.

The court appointed counsel for Warren. At a status conference, the prosecutor argued that while the jury found Warren was not one of the shooters, the jury instructions given showed Warren's petition should be denied. Defense counsel stated he had reviewed the instructions and submitted on the matter without argument. The court summarily denied the petition, ruling it was "denied for the reasons articulated by [the prosecutor]."

Warren appeals from the court's order.

DISCUSSION

I. *Legal Principles and Standard of Review*

Senate Bill No. 1437, effective January 1, 2019, "amend[ed] the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) "The Legislature enacted Senate Bill [No.] 1437 'to more equitably sentence offenders in accordance

9

with their involvement in homicides.' [Citation.] The Legislature recognized, 'It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability.' " (*People v. Curiel* (2023) ___ Cal.5th ___, ___ [2023 WL 8178140, at *6] (*Curiel*).) Under the new law and its later expansion by Senate Bill No. 775, "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1172.6, subd. (a).)

Thus, "[o]utside of the felony-murder rule, 'a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' " (*Curiel, supra*, ___ Cal.5th at p. ___ [2023 WL 8178140, at *6].) The change eliminates liability for first or second degree murder as an aider and abettor under the under the natural and probable consequences theory. (*Id.* at p. ___ [2023 WL 8178140, at *15]; *People v Reyes* (2023) 14 Cal.5th 981, 986; see also *Strong*, 13 Cal.5th at p. 707, fn. 1.)

The Legislature created a procedural mechanism for those convicted under the former law to petition the trial court for retroactive relief under the amended law. (§ 1172.6, subd. (a); *Curiel, supra*, ___ Cal.5th at p. ___ [2023 WL 8178140, at *7]; *Strong, supra*, 13 Cal.5th at p. 708.) The petition must allege (1) that the petitioner was subject to a complaint, information, or

indictment that allowed the prosecution to proceed under the natural and probable consequences doctrine or other theory of imputed malice; (2) the petitioner was convicted of murder, attempted murder, or manslaughter; and (3) the petitioner could no longer be convicted of murder because of changes to section 188 or 189. (§ 1172.6, subd. (a); see *Curiel*, at p. ___ [2023 WL 8178140, at *8].)

" 'When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the petitioner has made a prima facie case for relief." [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Curiel*, *supra*, ___ Cal.5th at p. ___ [2023 WL 8178140, at *8]; § 1172.6, subd. (c); see also *Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14; see §§ 188, subd. (a)(3), 189, subd. (e).) If the record contains facts refuting the allegations made in

11

the petition, then the court is justified in making a credibility determination adverse to the petitioner. (*Curiel*, *supra*, ___ Cal.5th at p. ___ [2023 WL 8178140, at *13]; *People v. Lewis* (2021) 11 Cal.5th 952, 971; *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.) To make the prima facie determination, the court may review the jury instructions and jury verdicts, which are part of the record of conviction. (*Bodely*, at p. 1200; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.) A relevant jury finding can establish a defendant's ineligibility for resentencing under Senate Bill No. 1437 and preclude a defendant from making a prima facie case for relief. (*Curiel*, at p. ___ [2023 WL 8178140, at *10]; *Strong*, *supra*, 13 Cal.5th at p. 510.)

We review de novo an order denying a section 1172.6 petition at the prima facie review stage. (*People v. Flores*, *supra*, 96 Cal.App.5th at p. 1170; *People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.) Warren agrees a de novo standard of review applies, but characterizes the issue as one of statutory interpretation.

II. *Warren Cannot Establish a Prima Facie Claim for Relief*

Warren contends that, accepting the truth of the allegations in his petition, and considering the jury's not true findings on the special circumstance and firearm allegations, he established prima facie he is entitled to relief, as "he was not the actual killer, and he was convicted of second degree murder under a legal theory which is no longer valid." For the latter proposition, he cites *People v. Lewis*, *supra*, 11 Cal.5th at page 971 and

*People v. Flores* (2022) 76 Cal.App.5th 974, 986 without discussion.[6] Warren does not explain precisely how his second degree murder conviction no longer survives the passage of Senate Bill Nos. 1437 or 775.

In response, the People point out that Warren's jury was not instructed on felony murder, the natural and probable consequences doctrine, or any other theory of liability that would have permitted the jury to impute malice to him. Rather, as indicated, the jury was instructed on direct aiding and

---

[6] At the cited page in *People v. Lewis, supra,* 11 Cal.5th 951, the court simply sets out general principles about the limited prima facie inquiry and use of the record of conviction. (*Id.* at p. 971.) In *People v. Flores, supra,* 76 Cal.App.5th 974, the defendant pleaded no contest to second degree murder on an amended information that generically charged him with murder. (*Id.* at p. 978.) The trial court on his petition for resentencing did not make the required preliminary assessment by deciding whether his record of conviction conclusively refuted the petition's allegations, which were facially sufficient under the law. (*Ibid.*) The Court of Appeal went ahead to conclude the petitioner had made out a prima facie case. It rejected the People's reliance on its prior appellate opinion in the matter (*id.* at p. 988), and held the preliminary hearing transcript (in which a sheriff's deputy testified the defendant said his codefendant shot the victim "multiple times and beat him around the head and upper body, after which [the defendant] may have accidentally run over [the victim] twice while leaving the scene") did not establish the petitioner's ineligibility for relief as a matter of law, as it did not conclusively rebut his allegations or exclude the possibility that the petitioner was, or could have been, convicted under the imputed malice theories eliminated by Senate Bill No. 1437. (*People v. Flores,* at pp. 991-992 ["To find petitioner ineligible for resentencing on this record would require judicial factfinding, which is impermissible at the prima facie stage"].) In *Flores,* the defendant's statements to the deputy did not preclude the possibility that the codefendant/accomplice, not the defendant, was the actual killer, or that the defendant aided and abetted his accomplice without the intent to kill the victim. Here, Warren's record of conviction from his jury trial *does* preclude the possibility that the jury found he committed second degree murder by imputing malice to him based solely on his participation in a crime. *Flores* does not assist Warren.

abetting (CALCRIM Nos. 400, 401), first and second degree murder along with the difference between express and implied malice aforethought (CALCRIM No. 520), and first degree murder based on premeditation and deliberation (CALCRIM No. 521). The People say under the instructions given, "the jury necessarily found that [Warren] committed the murder as either a direct perpetrator or a direct aider and abettor" and even if the jury found he was not the actual killer, they "could convict [Warren] of second degree murder as an aider or abettor only upon concluding, beyond a reasonable doubt, that he had 'the intent or purpose of committing or encouraging or facilitating the commission of the crime.'" Pointing out the jury was not instructed it could find Warren guilty of murder by concluding he had the intent to commit, encourage, or facilitate the commission of a non-homicide offense, the People argue the record conclusively demonstrates he was not convicted of murder under a theory eliminated by Senate Bill No. 1437, thus the court properly denied the resentencing petition.

In reply, Warren is silent on the People's assertion that the jury instructions did not permit the jury to impute malice, consider felony murder, or apply the natural and probable consequences doctrine. For the first time, he argues based on *People v. Langi* (2022) 73 Cal.App.5th 972 that the aiding and abetting instruction, CALCRIM No. 401, and the implied malice instruction within CALCRIM No. 520 permitted the jury to find him guilty of second degree murder as an accomplice without finding he personally intended to kill the victim. According to Warren, "[s]ince the aiding and abetting instruction [of CALCRIM No. 401] did not specify the perpetrator had to commit the crime of murder, the instruction stated only 'the perpetrator intended to commit the crime,' the jury could have convicted

14

[him] of second degree murder as an accomplice if the actual killer intended only to assault the victim, not kill him."

Normally we would consider these new contentions forfeited, as " 'arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party.' " (*People v. Tran* (2022) 13 Cal.5th 1169, 1208; see *People v. Ng* (2022) 13 Cal.5th 448, 568, fn. 13 [same].) Warren had every opportunity to raise such a claim, as his opening brief in this appeal was filed in November 2022, well after the January 2022 issuance of *People v. Langi, supra*, 73 Cal.App.5th 972.

We in any event reject the contentions, and affirm the court's summary dismissal of Warren's petition. As a threshold matter, we agree that the absence of jury instructions on felony murder or the natural and probable consequences doctrine, means the jury could not have convicted him on those theories, permitting summary denial of section 1172.6 relief. (See *People v. Coley, supra,* 77 Cal.App.5th at p. 548 [defendant convicted of attempted murder not entitled to section 1172.6 relief because the jury was not instructed on the natural and probable consequences doctrine]; see also *People v. Estrada* (2022) 77 Cal.App.5th 941, 946 [trial court never instructed the jury on the natural and probable consequences doctrine and instructions as a whole did not permit conviction on natural and probable consequences theory; summary denial of petition affirmed].) The record of conviction here—in particular, the jury instructions as well as the verdicts and findings—conclusively shows Warren's murder conviction was at a minimum based on Warren aiding and abetting implied malice second degree murder, a still valid theory of murder notwithstanding the changes in the law. (See *People v. Reyes, supra,* 14 Cal.5th at pp. 990-991; *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1113, review granted, Aug. 9, 2023, S280278 [observing

15

this court has joined the " 'chorus of appellate authorities . . . which have uniformly upheld aiding and abetting implied malice murder as a viable form of murder liability, notwithstanding the legislative changes effectuated by Senate Bill [No.] 1437 and Senate Bill [No.] 775' "]; *People v. Silva* (2023) 87 Cal.App.5th 632, 639; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 391-392 ["a person convicted of aiding and abetting implied malice murder is not a person convicted of murder pursuant to a theory under which malice is imputed based solely on the person's participation in a crime"]; *People v. Langi, supra,* 73 Cal.App.5th at pp. 982-983; *People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 499; *People v. Powell* (2021) 63 Cal.App.5th 689, 710-714.) There was no other theory presented to the jury under which Warren could have been convicted of murder "under which malice [was] imputed to [him] based solely on [his] participation in a crime." (§ 1172.6, subd. (a).)

As for Warren's instructional error arguments, at the time of Warren's 2013 conviction, the law already required a direct aider and abettor of murder "know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 ["when the charged offense and the intended offense—murder or attempted murder—are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, . . . the aider and abettor must know and share the murderous intent of the actual perpetrator"]; see also *People v. Gentile* (2020) 10 Cal.5th 830.) Under these circumstances, this court has decided that the sort of instructional error claims made by section 1172.6 petitioners "ha[ve] nothing to do with the changes to the law of murder that authorize convicted murderers to seek relief under section 1172.6." (*People v. Flores, supra,* 96 Cal.App.5th at p. 1173; *People v. Burns* (2023) 95 Cal.App.5th 862, 867

16

[defendant's challenge to former CALCRIM No. 400—based on case law decided well before the jury verdict in his trial—"has nothing to do with the legislative changes to California's murder law" and thus defendant "did not satisfy the section 1172.6, subdivision (a)(3) condition" that he could not presently be convicted of murder *because of* changes to section 188 or 189 made effective January 1, 2019]; accord, *People v. Berry-Vierwinden* (2023) ___ Cal.App.5th ___, ___ [2023 WL 8441785, at *8] ["a section 1172.6 petitioner cannot establish a prima facie case for relief by asserting that the jury instructions permitted conviction on a theory of imputed malice that was *already* prohibited even *before* the enactment of Senate Bill No. 1437" because it "amounts to 'a routine claim of instructional error' that 'could have been raised in his [direct] appeal' "].)

Nothing in *Langi* compels a different conclusion in any event. There, unlike this case, the defendant was convicted of not only second degree murder but also battery and robbery in connection with the beating death of a robbery victim. (*People v. Langi, supra*, 73 Cal.App.5th at p. 975.) The victim died from falling and striking his head after he was punched by an individual in a group of men including the defendant. (*Ibid.*) "As the case was tried, the jury could have found [the defendant] guilty as an aider and abettor even if it found that someone else threw the fatal punch." (*Id.* at p. 980.) The defendant's jury was not instructed on the natural and probable consequences doctrine but was instructed on second degree murder under CALJIC No. 8.31 and aiding and abetting under CALJIC No. 3.01. CALJIC No. 3.01 was "identical in relevant substance" to CALCRIM No. 401. (*Id.* at pp. 980-981, 983.)

*Langi* found that although the aiding and abetting instruction stated that a person aids and abets a crime if he or she acts " '*with knowledge of the*

17

*unlawful purpose of the perpetrator*, and . . . with the intent or purpose of committing or encouraging or facilitating the commission of the crime,' " "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*People v. Langi, supra*, 73 Cal.App.5th at p. 982.) "Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Id.* at pp. 982-983.) Reasoning the instructions created an ambiguity,[7] *Langi* held the instructions permitted

---

[7] In part, *Langi* reasoned: "[T]he standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*People v. Langi, supra*, 73 Cal.App.5th at p. 982, fn. omitted, citing *People v. Powell, supra*, 63 Cal.App.5th at pp. 712-714.) We reject Warren's argument that because the instructions here referred to aiding and abetting the "commission of (an unspecified) crime" instead of the "commission of *murder*," there was a possibility the jury could have convicted him of second degree murder as an accomplice based on the conclusion that the perpetrator intended only to commit some lesser or different crime such as assault. Nothing in the record indicates the jury relied on some other unidentified and uncharged target crime to convict Warren without finding he acted with implied malice. Rather, the jury instructions properly reflected the law: "[W]hen the charged offense and the intended offense—murder . . . are the same, i.e. guilt [for murder] does not depend on the natural and probable consequences doctrine

18

the jury "to conclude that, to be guilty as an aider and abettor of second degree murder, [the defendant] need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id.* at p. 983, fn. omitted.) In other words, the instruction did not require the jury to determine whether the defendant knew the act he aided (i.e., the punch) was life-threatening or whether he acted with indifference to human life, but allowed the jury to convict him based on a now-invalid vicarious felony murder theory. (*Id.* at p. 982.) Because the record did not establish the defendant was categorically ineligible for relief, an evidentiary hearing was required. (*Id.* at p. 984.)

*Langi* is distinguishable. Unlike the defendant in that case, Warren was not charged with non-murder crimes in addition to murder. Whereas the perpetrator who threw the fatal punch in *Langi, supra,* 73 Cal.App.5th 972 may not have had murderous intent, the crime of murder required acting either with an intent to kill or implied malice. And because there was no crime other than murder charged, the aiding and abetting instructions required the jury to find that Warren knew the perpetrator intended to commit the crime of murder, and that he acted with the intent or purpose of committing, encouraging, or facilitating that murder. "Absent some circumstance negating malice," where the only unlawful purpose charged is an unlawful killing, "one cannot knowingly and intentionally help another

---

. . . the aider and abettor must know and share the murderous intent of the actual perpetrator." (*People v. McCoy, supra,* 25 Cal.4th at p. 1118.)

commit an unlawful killing without acting with malice." (*People v. McCoy, supra*, 25 Cal.4th at p. 1123.)

## DISPOSITION

The order is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


KELETY, J.